UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **CINDY BRIDWELL** ) | |
| **RR 3 BOX 80** ) | |
| **Sumner, Illinois 62466** ) | |
| ) | **Case No.** |
| ) | |
| **Plaintiff** ) | |
| **v.** ) | |
| ) | |
| **SUSAN BROWNELL** ) | |
| **Vice President** ) | |
| **Supply Management** ) | |
| **United States Postal Service** ) | |
| **IN HER OFFICIAL CAPACITY** ) | |
| **475 L'Efant Plaza** ) | |
| **South West Washington, DC 20260-0010** ) | |
| ) | |
| **and** ) | |
| ) | |
| **JOHN E. POTTER** ) | |
| **Postmaster General** ) | |
| **United States Postal Service** ) | |
| **IN HIS OFFICIAL CAPACITY** ) | |
| **475 L'Efant Plaza** ) | |
| **South West Washington, DC 20260-0010** ) | |
| ) | |
| **and** ) | |
| ) | |
| **UNITED STATES POSTAL SERVICE** ) | |
| **475 L'Efant Plaza** ) | |
| **South West Washington, DC 20260-0010** ) | |
| ) | |
| **and** ) | |
| ) | |
| **SLM TRANS, INC.** ) | |
| **SERVE:** ) | |
| **Registered Agent** ) | |
| **Shelly Myles** ) | |
| **3300 Almaden Court** ) | |
| **Bowie, MD 20716** ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT FOR INJUNCTIVE RELIEF**

1

Plaintiff, Cindy Bridwell, states the following for her Complaint against the Defendants, Susan Brownell, Vice President Supply Management, in her official capacity, John E. Potter, Postmaster General, in his official capacity, the United States Postal Service and SLM Trans, Inc.

## PARTIES, JURISDICTION AND VENUE

1.    Cindy Bridwell, Plaintiff, resides in Sumner Illinois.  Until February 29, 2008, she was employed by Defendant, SLM Trans, Inc. ("SLM") as a Fuel Tax administrator.

2.    Defendant United States Postal Service ("Postal Service") is an independent establishment of the executive branch of the Government of the United States. 39 U.S.C. § 201.  The Postal Service may be sued in its official name.  39 U.S.C. § 401(1).  The United States Postal Service Office of Inspector General is the enforcement arm of the United States Postal Service.  Defendant, Susan Brownell, the United States Postal Service Vice President for Supply Management is sued in her official capacity.  Defendant, John E. Potter, the Postmaster General and the Chief Executive Office of the Postal Service is sued in his official capacity.

3.    SLM is a Maryland corporation in good standing.

4.    The United States District Courts have original but not exclusive jurisdiction over all actions brought by or against the Postal Service. 39 U.S.C. § 409(a). The Court also has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1343 and 1367(a).

5.    This is a civil action to redress the United States Postal Service Supply
Management's and Office of Inspector General's deprivation of Ms.
Bridwell's due process rights guaranteed by the Fifth Amendment to the
United States Constitution.  This action also seeks to redress the Office of
Inspector General's and Supply Management's illegal de facto debarment of
her by effectively forbidding her from performing Postal Service contracts
without affording her the safeguards set out in the Postal Service's debarment
regulations.  39 C.F.R. § 601.113(h).  Excluding a contractor or their
employees from other contract opportunities is not allowed outside of an
agency's formal debarment procedures.  *Myers & Myers, Inc. v. United States
Postal Serv.*, 527 F.2d 1252 (2d Cir. 1975); *Dynamic Aviation v. Dept. of
Interior*, 898 F. Supp. 11 (D.D.C. 1995); *Art-Metal USA, Inc. v. Solomon*, 473
F. Supp. 1 (D.D.C. 1978); *Peter Kiewit & Sons Co. v. United States Army
Corps of Eng'rs*, 534 F.Supp. 1139 (D.D.C. 1982), *rev'd on other grounds*,
714 F.3d 163 (D.C.Cir. 1983).

6.    The United States Postal Service Supply Management's and Office of
Inspector General's determination to deprive Ms. Bridwell of her employment
and service to the United States Postal Service also violates her liberty interest
to be free from government defamation and stigmatizing accusations without
due process of law.  *Old Dominion Dairy Products, Inc. v. Secretary of
Defense*, 631 F.2d 953 (D.C. Cir. 1980); *Related Indus., Inc. v. United States* 2
Cl. Ct. 517 (1983).

7.    SLM's actions in this matter constitute a wrongful termination of Ms.
      Bridwell.

## NATURE OF THE ACTION

8.    This is an action for declaratory and preliminary and permanent injunctive
      relief seeking to require the Postal Service to lift its requirement that SLM (a
      Post Service contractor) terminate Ms. Bridwell's employment.

### Ms. Bridwell's Employment

9.    Ms. Bridwell, a 42 year old wife and mother of two living in rural and
      economically depressed Sumner, Illinois, has been an honest, hard working
      and highly competent lower level administrator in the mail transportation/fuel
      and mileage industry for 19 years.

10.   During these 19 years, Ms. Bridwell has worked for trucking transport
      companies, including, among others, Midwest Transit, Inc. ("MWT") (now
      known as Midwest Transport, Inc. ("MTI"), although Ms. Bridwell never
      worked for MTI) and Defendant SLM Trans, Inc. ("SLM") (not affiliated with
      MWT) (collectively "The Companies").

11.   The Postal Service has contracted with each of The Companies at various
      times to provide transportation of mail over specified highway contract routes
      ("HCRs") under various HCR contracts.

12.   For these 19 years, Ms. Bridwell's work had focused predominately on
      maintaining records and interfacing on fuel tax allocation issues with the
      various states through which her employers' (former and present) routes have
      run.

13.     As an additional part of her duties, Ms. Bridwell had collected The

Companies' fuel purchasing data and reported that information to her

superiors.  Ms. Bridwell's superiors, in turn, reported the fuel purchasing

information to the Postal Service for the purpose of obtaining any available

fuel purchase reimbursements.  There have been others employed by The

Companies who have also had as part of their duties the collection and

reporting of fuel purchasing data to their superiors, including Grace Wirth (at

MWT and SLM), Jenny Hixon-Miller (at MWT and SLM) and Deona Dugger

(at MWT and MTI).  Ms. Wirth and Ms. Hixon-Miller currently still work at

SLM and Ms. Dugger currently still works at MTI.

14.     Importantly, Ms. Bridwell has never herself ever been involved in the

certification or submission of any fuel reimbursement claims to the Postal

Service.  She has merely collected that information at the direction of her

superiors so that her superiors could certify the fuel purchase data to the

Postal Service.

**The Postal Service's Investigation of MWT, MTI and Hal D. Hicks**

15.     MWT was operated by a gentleman named Hal D. Hicks ("Hicks").  Hicks

also, on occasion, contracted separately in his own personal name with the

Postal Service.  After MWT was placed in receivership, the company re-

emerged as MTI.  Hicks has never operated MTI or SLM.

16.     On January 12, 2006, Hicks pled guilty to, *inter alia,* willfully and knowingly

making a false, fictitious and fraudulent statement, in that he allegedly

falsified a Fuel Use Certification submitted to the Postal Service in connection

with the performance of a mail transportation contract with the Postal Service in his own personal name.

17.    Fuel Use Certifications were the means by which MWT, Hicks and later MTI requested increases in compensation under their contracts with the Postal Service based on increases in the cost of fuel. Fuel Use Certifications were to include information on the increases in fuel rates and also include an explanation of any discounts on the price paid for fuel.

18.    Hicks was purported to have falsified the Fuel Use Certification by failing to report to the Postal Service certain fuel purchase rebates he had received from Pilot Fuel Stations. The Postal Service alleged that this was a failure to report a fuel discount which resulted in the recoupment of an illegal overpayment by Hicks and Hicks alleged, in contrast, that these rebates were not definitionally "discounts" and did not need to be reported to the Postal Service.

19.    Hicks was sentenced to 18 months in jail for his guilty plea to this and other alleged crimes and was debarred by the Postal Service for a three year period, beginning September 29, 2006.

20.    The Postal Service then circled back to investigating the past conduct of MWT and the current conduct of MTI in relation to this alleged rebate and fuel certification scheme. As a result of this investigation, the Postal Service filed a lawsuit against MWT/MTI seeking, *inter alia*, reimbursement of the alleged fuel overpayments. Exhibit A, Postal Service Complaint.

21.    The individuals named in that lawsuit as having played a part in MWT's/MTI's allegedly illegal fuel certification process were Hicks, Janie

Ensminger, John Elmore and Ken Hohlbaugh. According to the MWT/MTI process, Ensminger, Elmore and Hohlbaugh, under the direction of Hicks, signed fuel certifications which did not disclose the rebates MWT/MTI had received from Pilot. Exhibit A, page 8.

22.    Except for the references to them in the Complaint, Ensminger, Elmore and Hohlbaugh have not been pursued by the Postal Service for debarment or any other remedy.

23.    Importantly, the Postal Service's Complaint does not reference Ms. Bridwell as playing any part in the allegedly illegal fuel certification process while at MWT and, furthermore, Ms. Bridwell was never even referenced in the Postal Service's Complaint at all.

24.    As part of the Postal Service's investigation into MWT, the Postal Service did, however, interview Ms. Bridwell to gain an understanding of the fuel price reporting process. Exhibit B, Postal Service Investigation. Many others were interviewed as well including, notably, Jane Ensminger. Ms. Bridwell was, however, the only MWT employee who processed fuel purchasing data to have offered her time for the Postal Service interview. No other similarly situated employees were interviewed because, apparently, the Postal Service investigators were able to collect all of the background information they needed from Ms. Bridwell.

25.    In its investigation report, the Postal Service described Ms. Bridwell's responsibilities in fuel price reporting as being purely administrative. According to the report, Ms. Bridwell was explicitly instructed by her

7

superiors on how and when to generate fuel certifications. The report does not

describe Ms. Bridwell as having any decision-making authority regarding how

fuel prices were ultimately generated or reported to the Postal Service.

Instead, Ms. Bridwell prepared the fuel certifications completely under the

direction of her superiors. Exhibit B, page 3.

26.    Furthermore, the Postal Service's investigation report explicitly states that Ms.

Bridwell was "not a Hal Hicks sympathizer" – further indicating her

separation from any allegedly illegal schemes or acts undertaken by Hicks and

others. Exhibit B, page 1.

27.    Thus, based on the recorded history of the Postal Service's investigation into

MWT and MTI, it was determined by the Postal Service that Hicks,

Ensminger, Elmore and Hohlbaugh were the culprits in the companies'

alleged fuel certification scheme—and, according to the documentation,

Bridwell was not criminally or civilly responsible to any degree.

### The Postal Service's Investigation of SLM

28.    Some time after her resignation from MWT, Ms. Bridwell went to work for

SLM, a company owned by Shelly Myles ("Myles"). Myles is the daughter of

Hicks.

29.    Following the discipline levied on Hicks and based on the perceived

affiliation between Myles and Hicks, the Postal Service suspended and

proposed to debar Myles and SLM.

30.    However, in order to avoid debarment, the Postal Service proposed and Myles

and SLM agreed to take certain actions to assure the Postal Service that Myles

and SLM had severed any previous alleged ties to Hicks.  Exhibit C,

Settlement Agreement.

31.    During the negotiation of the Settlement Agreement, the Postal Service

explicitly described the actions Myles and SLM must take to demonstrate

their complete severing of business and financial connections to Hicks.

32.    Bizarrely and unexpectedly, however, the Postal Service stated, at the

eleventh hour of negotiations, that it would not enter into the Settlement

Agreement unless, in essence, individuals previously employed by Hicks were

terminated within six months.  Exhibit C, page 4.  The Postal Service

inexplicably singled out *only* Ms. Bridwell as someone who had been

previously employed by Hicks (at MWT) and, despite her lack of allegiance to

Hicks, demanded that she be terminated.  The Postal Service never gave any

detailed explanation whatsoever for their demand that Ms. Bridwell be

terminated to SLM, Myles, Ms. Bridwell or anyone else.  Furthermore, the

Postal Service never gave any explanation as to why Ms. Bridwell was singled

out, even though other SLM employees (Ms. Wirth and Ms. Hixon-Miller)

had also previously worked for Hal Hicks at MWT and has also been involved

in fuel purchase reporting.

33.    With their backs against the wall and desperately needing to release the

specter of suspension and possible debarment, SLM agreed to the provision,

hoping that it would not ultimately be enforced by the Postal Service.  Exhibit

D, SLM Letter, page 2.

34.     Amazingly, the Postal Service never notified Ms. Bridwell of her required

termination and never initiated any sort of Postal Service debarment

proceedings as mandated by 39 C.F.R. § 601.113.

35.     Instead, in an unabashed and seemingly very deliberate attempt to completely

ignore the mandates of 39 C.F.R. § 601.113, Ms. Bridwell's constitutional due

process rights and its own investigation report which found that Ms. Bridwell

was not a Hicks sympathizer (Exhibit B), the Postal Service summarily

effectively de facto debarred Ms. Bridwell (a hardworking, honest and humble

employee who had never been previously charged with any wrongdoing)

without justification, notification or appropriate procedural process.

36.     Perhaps the most baffling part of this development was that the Postal Service

did not seek the debarment of any of the other individuals at MWT/MTI

(Ensminger, Elmore or Hohlbaugh) who *were* specifically cited by the Postal

Service in its lawsuit as having a hand in the allegedly illegal fuel certification

scheme (Exhibit A)—nor any other individuals who performed the exact same

duties for Hicks as Ms. Bridwell while at MWT (Wirth, Hixon-Miller or

Dugger).  Apparently, Ms. Bridwell was just very unlucky to have been on the

Postal Service's radar screen as someone who had previously worked for

Hicks—despite her lack of allegiance to Hicks, as noted in the Postal

Service's own investigation report.  Exhibit B, page 1.

37.     At the request of SLM and Myles, Ms. Bridwell's termination date has been

extended to February 29, 2008 but, after that date, the Postal Service demands

that Ms. Bridwell be terminated immediately.

**SLM, Myles' and Bridwell's Pleas for Leniency**

38.  In an attempt to get the Postal Service to reconsider its requirement that Ms. Bridwell be terminated (i.e. to reconsider its debarment of her), SLM, Myles and Ms. Bridwell wrote to the Postal Service pleading for leniency.

39.  In a November 29, 2007 letter, Myles, on behalf of SLM, wrote to Susan Brownell, Vice President of Supply Management for the Postal Service, indicating how vital Ms. Bridwell is to SLM and how devastating her termination would be the SLM and to Ms. Bridwell.  Exhibit D.

40.  Myles described Ms. Bridwell as "an outstanding employee for SLM, with irreplaceable experience in all of the administrative areas supporting SLM's Postal Service contract performance."  Exhibit D, page 2.

41.  Myles went on to say that she has "attempted to find and hire a suitable replacement for Ms. Bridwell.  However, there is no one in the southern Illinois vicinity of our Sumner, Illinois offices with any experience in this business.  Moreover, there is not practical or feasible way to replace Ms. Bridwell's 19 years of experience and intimate knowledge of the requirements of the many states with which SLM has to deal on state fuel tax issues, as well as the applicable DOT driver log requirements."  Exhibit D, page 2.  Importantly, Ms. Bridwell's expertise in fuel tax and driver log issues is not shared by any other employees of SLM, including Ms. Wirth and Ms. Hixon-Miller.

42.  Myles continued by, again, stating that Ms. Bridwell "has no role in SLM's bidding or pricing of contracts, and does not prepare, certify or submit any

claims on SLM's behalf to the Postal Service" and, therefore, poses no risks to the Postal Service whatsoever. Exhibit D, page 3.

43.    Myles concluded her letter by requesting that Ms. Bridwell be allowed to continue to be employed by SLM "pending a decision after due process notice to her of any claims and an opportunity to respond thereto, as provided in the Postal Service regulations." Exhibit D, page 3.

44.    Ms. Bridwell also wrote a letter to Ms. Brownell at the Postal Service. Exhibit E, Bridwell Letter. In that letter, Ms. Bridwell described how desperate her family's financial and physical wellbeing would be if she were terminated and debarred. Ms. Bridwell described the impossibility of finding a job near Sumner, Illinois paying similar wages to what she makes at SLM and indicated how her small children and her diabetic husband are dependent upon her SLM income and health benefits to survive.

45.    Without any modicum of procedural due process or even an explanation afforded to Ms. Bridwell as to exactly how she posed a threat to SLM or the Postal Service (other than, vaguely, her previous employment by Hicks), the Postal Service summarily denied SLM's and Ms. Bridwell's pleas. Exhibit F, Postal Service Letter.

46.    As a result, SLM was forced to write a termination letter to Ms. Bridwell on February 12, 2008 which Ms. Bridwell received on February 20, 2008—nine days before her termination. Exhibit G, Termination Letter.

### Harm to Ms. Bridwell and Her Family

47.   As indicated above, Ms. Bridwell and her family will be devastated by the Postal Service's actions after she is terminated on February 29, 2008.

48.   Ms. Bridwell has no college education and, if she is terminated and thereby deprived of her livelihood, her family will essentially be destitute because similarly paying employment is virtually non-existent in Sumner, Illinois and because her diabetic husband's small construction business is on the brink of bankruptcy. See, Exhibit E, page 1.

49.   Ms. Bridwell has searched for other jobs but has been unable to locate any employment paying anything close to what she is currently making.

50.   In short, if the Postal service continues to require Ms. Bridwell's termination and de facto debarment, Ms. Bridwell will be unemployed and she and her family will be placed in a financially ruinous situation.

51.   Furthermore, Ms. Bridwell's termination has and will continue to defame and stigmatize Ms. Bridwell.  The bald assertion that her previous employment by Hicks somehow makes her guilty of the crimes he allegedly committed is a public statement suggesting that Ms. Bridwell is a criminal or, at the very least, a person who engages in fraud and deceit.  Other employees of SLM, residents of Sumner, Illinois and also employees of the Postal Service are aware of the alleged reasoning for Ms. Bridwell's termination and Ms. Bridwell's reputation has suffered and will continue to suffer in the future as a result—especially in the sense that the Postal Service's defamation of Ms.

Bridwell will harm her ability to obtain future employment from any future employer.

## COUNT I

## (PROCEDURAL DUE PROCESS)

52.    The allegations contained in paragraphs 1-51 are incorporated herein as if fully set forth.

53.    Pursuant to the Fifth Amendment to the United States Constitution, the government cannot deprive a citizen of their liberty or property without due process of law. When the government takes action that infringes upon a citizen's business reputation, including specifically the citizen's reputation for honestly, integrity, quality, and capability to perform her chosen line of work, due process requires that the government give advance notice of the contemplated action, an explanation of the evidence against the citizen, and an opportunity to respond to the government allegations, all before the action is taken.

54.    The Postal Service never personally gave Ms. Bridwell notice of the action against her (i.e. the inclusion of the requirement in the Settlement Agreement that she be terminated), an explanation of the evidence it possessed against Ms. Bridwell or an opportunity to respond to the Postal Service's allegations before they required that she be terminated in the Settlement Agreement.

55.    Instead, with virtually no investigation into whether Ms. Bridwell was somehow to blame for the alleged misconduct of Hicks, the Postal Service

summarily required her dismissal without any notice or an opportunity to be heard.

56.    Even in the face of SLM's pleas to give Ms. Bridwell an opportunity to present her case, the Postal Service ignored all input and hastily required that Ms. Bridwell be terminated. Exhibit D, page 3.

57.    The Postal Service's decision to require Ms. Bridwell's termination without providing for notice and an opportunity to be heard and without reliance on any persuasive or credible evidence was irrational, arbitrary, capricious and completely violative of her procedural and substantive due process rights.

## COUNT II

### (LIBERTY AND PROPERTY INTEREST VIOLATIONS)

58.    The allegations contained in paragraphs 1-57 are incorporated herein as if fully set forth.

59.    By incorrectly associating Ms. Bridwell with the alleged misconduct of Hicks, by publicly announcing this incorrect association to SLM and Postal Service employees and by requiring the termination of Ms. Bridwell, the Postal Service has improperly defamed and stigmatized Ms. Bridwell without due process of law.

60.    During her entire tenure with MWT and SLM, Ms. Bridwell has developed a stellar reputation for honesty, integrity and responsibility. The Postal Service's improper, irrational, arbitrary and capricious requirement that she be terminated has sullied that hard-earned reputation without due process of law.

61.    By requiring Ms. Bridwell's termination, the Postal Service has also prevented
her from continuing her livelihood for the past 19 years in the mail
transportation/fuel and mileage industry.  Such action effectively prevents her
from continuing employment with SLM, from finding future employment in
the industry and from obtaining future employment in other occupations
which require a reputation of honesty, integrity and trustworthiness.

62.    In addition to violating Ms. Bridwell's procedural due process rights, the
Postal Service's requirement that Ms. Bridwell be terminated violated her
substantive due process rights because its determination had no rational basis
and was arbitrary and capricious.

**COUNT III**

**(DEFACTO DEBARMENT)**

63.    The allegations contained in paragraphs 1-62 are incorporated herein as if
fully set forth.

64.    By requiring that Ms. Bridwell be terminated, the Postal Service has
effectively de facto debarred Ms. Bridwell from performing services and
contracts for the Postal Service without providing adequate notice and an
opportunity for a meaningful hearing.

65.    By requiring that Ms. Bridwell be terminated, the Postal Service has also
effectively precluded Ms. Bridwell from performing any further government
contracts of any kind, without providing adequate notice and an opportunity
for a meaningful hearing.

66.    Similar to other federal agencies, the Postal Service has regulations governing suspension and debarment.  The Postal Service's regulations appear at 39 C.F.R. § 601.113, 70 Fed. Reg. 20296 (April 19, 2005).  These regulations require that prior to debarment, the Postal Service must first provide the person or entity to be debarred with written notice of the reasons for the proposed debarment and an opportunity to oppose the proposed debarment. *Id*. at § 601.113(h).  Questions of fact underlying the proposed debarment are to be resolved by a hearing before an independent Judicial Officer based on a preponderance of the evidence standard.  *Id*. at § 601.113(h)(4).  Mitigating factors are also to be considered by the debarring official.  *Id*. at § 601.113(f).

67.    The Postal Service effectively debarred Ms. Bridwell without providing her any of the procedural protections afforded under the Postal Service's suspension and debarment regulations.

## COUNT IV

## (WRONGFUL TERMINATION)

68.    The allegations contained in paragraphs 1-67 are incorporated herein as if fully set forth.

69.    At the Postal Service's behest, SLM wrongfully terminated Ms. Bridwell without justification and in violation of all applicable employment contracts (written and oral) and in violation of state and federal law.  This wrongful termination case, as indicated above deprived Ms. Bridwell of the livelihood she has enjoyed for more than 19 years.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff Cindy Bridwell demands judgment in her favor and against Susan Brownell, Vice President Supply Management, in her official capacity, John E. Potter, Postmaster General, in his official capacity and the United States Postal Service, including the following specific relief:

A.   A declaration that the Postal Service's requirement that Ms. Bridwell be terminated and debarred was a violation of Ms. Bridwell's procedural and substantive due process rights, and that it improperly stigmatized and defamed Ms. Bridwell's reputation for honesty, integrity and responsibility.

B.   A Temporary Restraining Order, a Preliminary Injunction and Permanent Injunction requiring the Postal Service and SLM to excise that portion of the Settlement Agreement that requires SLM to terminate Ms. Bridwell's employment and requiring SLM to retain Ms. Bridwell in her current position without recourse from the Postal Service.

C.   A Temporary Restraining Order, a Preliminary Injunction and Permanent Injunction permanently barring the Postal Service from ever again requiring Ms. Bridwell's termination, suspension or any other action against her in relation to her affiliation with Hicks or MWT, unless such action is based on new information or new allegations that were not previously known or previously investigated, and then only in accordance with due process of law.

D.    A Temporary Restraining Order, a Preliminary Injunction and Permanent Injunction barring the Postal Service from suspending or debarring Ms. Bridwell from working on or bidding on any Postal Services contracts, except in compliance with its published suspension and debarment regulations and in accordance with due process of law.

E.    Costs in bringing this action, including but not limited to attorney's fees and expert witness fees available under 28 U.S.C. § 1988.

F.    Other and further relief that the Court deems appropriate.

**WHEREFORE**, Plaintiff Cindy Bridwell demands judgment in her favor and against SLM, including the following specific relief:

A.    A declaration stating that SLM's termination of Ms. Bridwell (at the behest of the Postal Service) was improper and illegal and requiring that SLM retain Ms. Bridwell in her current position.

B.    Other and further relief that the Court deems appropriate.

**Jury Demand**

Plaintiff demands a jury trial of this matter.

Respectfully submitted,

Christopher C. S. Manning
Manning & Sossamon, PLLC
DC Bar No. 471315
1120 20th Street, NW
North Building, Suite 700
Washington, DC 20036
(202) 973-2681 (voice)
(202) 973-1212 (fax)
cmanning@manning-sossamon.com

Dated: February 27, 2008

## VERIFICATION

I, Cindy Bridwell, declare under penalty of perjury that I have read the foregoing Complaint, and that based upon my personal knowledge, the factual allegations made therein are true and correct.

Executed this ___ day of February 2008 in _____, Illinois

Cindy Bridwell

STATE OF ILLINOIS        )
                         )
COUNTY OF _____     )

The foregoing instrument was sworn to and subscribed before me this ___ day of February, 2008, by Cindy Bridwell, who is personally known to me or who has produced _____ (type of identification) as identification.

NOTARY PUBLIC
STATE OF ILLINOIS

(Print, Type or Stamp Commissioned Name of Notary Public)

"OFFICIAL SEAL"
Sally Roser
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 1.10.09

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Cindy Bridwell | Susan Brownell, John Potter, United States Postal Service, SLM Trans, Inc. |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    11001
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Christopher C. S. Manning<br>1120 20th Street, NW<br>North Building, Suite 700<br>Washington, DC 20036 | SLM Trans, Inc Counsel:<br>Hopewell H. Darneille, Esquire<br>Thompson Coburn LLP<br>1909 K Street, NW, Suite 600<br>Washington, DC 20006 |

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

O 1 U.S. Government Plaintiff

⊙ 2 U.S. Government Defendant

O 3 Federal Question (U.S. Government Not a Party)

O 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

### IV.  CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| O A. *Antitrust* | O B. *Personal Injury/ Malpractice* | O C. *Administrative Agency Review* | ⊙ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| O E. *General Civil (Other)*    OR | | | O F. *Pro Se General Civil* |
|---|---|---|---|
| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

39 U.S.C. Section 409(a)

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** Injunction | Check YES only if demanded in complaint |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☒  NO ☐ |

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE **2/27/2008**    SIGNATURE OF ATTORNEY OF RECORD

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

**I.**    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

**III.**   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

**VI.**   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.